1  WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Willie Douglas Rhodus,<br><br>    Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br><br>    Defendant. | No. CV-16-00238-TUC-LCK<br><br>**ORDER** |

Plaintiff Willie Rhodus filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Rhodus's Opening Brief and Defendant's Brief. (Docs. 18, 19.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 10.) Based on the pleadings and the administrative record submitted to the Court, the Commissioner's decision is affirmed.

**FACTUAL AND PROCEDURAL HISTORY**

Rhodus filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 29, 2012. (Administrative Record (AR) 175.) He alleged disability from January 1, 2009. (*Id.*) Rhodus's application was denied upon initial review (AR 45-74) and on reconsideration (AR 75-110). A hearing was held on July 16, 2014 (AR 22-44), after which the ALJ found that Rhodus was not disabled because he could perform his past relevant work (AR 9-17). The Appeals Council denied Rhodus's request to review the ALJ's decision. (AR 1.)

Rhodus was born on November 14, 1950, making him 58 years of age at the onset date of his alleged disability. (AR 175.) From 1998 to 2009, Rhodus worked as an officer at an insurance company and as an investment advisor. (AR 190.)

The ALJ found Rhodus had two severe impairments, degenerative joint disease (knees) and osteoarthritis. (AR 11.) The ALJ determined Rhodus had the Residual Functional Capacity (RFC) to perform sedentary work except he could sit for up to six hours and stand for up to two hours; lift/carry 10 pounds frequently; occasionally climb, balance, stoop, kneel, crouch, and crawl; and should avoid unprotected heights and dangerous machinery. (AR 14.) The ALJ concluded at Step Four, based on the testimony of a Vocational Expert, that Rhodus could perform his past work (as generally performed) as an investment representative or director of insurance. (AR 17.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42

U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Rhodus argues the ALJ erred in not finding his mental impairments severe at Step Two. Alternatively, Rhodus argues the ALJ erred in not evaluating the effect of his non-severe depression on his ability to work.

**Step Two**

Rhodus argues the ALJ failed to find, at Step Two, that his depression was a severe impairment. A finding of disability requires an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1505, 416.905. An impairment is "not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921.

The ALJ found that Rhodus had a medically determinable impairment of depressive disorder but concluded it was not severe because it did not cause "more than

minimal limitation in the claimant's ability to perform basic mental work activities." (AR 12.) In particular, the ALJ determined Rhodus had only mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace. (*Id.*)

To resolve this claim, the Court must examine the medical opinions regarding Rhodus's functional limitations arising from his mental impairment.[1] The record regarding how depression affects Rhodus's ability to work consists of (a) reports from two psychologists that examined Rhodus in December 2012 (Dr. Rau) and August 2014 (Dr. Glenn Marks); and (b) mental residual functional capacity assessments from January 2013 by a psychiatrist (Dr. Jack Marks) and June 2013 by a psychologist (Dr. Garland). (AR 57, 89.) Rhodus has no mental health treatment records. (AR 10.) The ALJ gave great weight to the 2014 assessment of examining psychologist Dr. Glenn Marks. The ALJ gave little weight to the opinion of examining psychologist Dr. Rau and rejected the opinions of the non-examining State agency physicians.

As an initial matter, Rhodus contends the ALJ failed to consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6) for weighing medical opinion evidence. The regulations do not require the ALJ to discuss these factors, only to consider them; there is no reason to believe the ALJ did not consider these factors as required. As discussed below, the ALJ explicitly discounted Dr. Rau's opinion as not well-supported by the evidence, one of the applicable factors. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Review of the other §§ 404.1527(c), 416.927(c) factors reveals little material distinction between the opinions of Dr. Rau and Dr. Glenn Marks. They both examined Rhodus one time but had no treating relationship with him, and they are both experts in psychology and the Social Security disability program. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), (5), (6), 416.927(c)(1), (2), (5), (6). Although Dr. Rau's opinion was consistent with the opinions of Drs. Garland and Jack Marks (while Dr. Glenn Marks's

---

[1] The Court does not rely upon Dr. Melvyn Weinberg's diagnosis of depression and observation of Rhodus's depressed affect (AR 280-81) because he evaluated only Rhodus's physical, not mental, limitations (AR 284).

- 4 -

opinion was not), *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4), that holds little weight as the two latter opinions were based solely on Dr. Rau's report.

Next, Plaintiff argues that the ALJ erred in rejecting the opinions of Drs. Rau, Garland, and Jack Marks. The opinion of an examining physician generally is afforded more weight than a non-examining or reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, these three opinions were contradicted by that of psychologist Glenn Marks. When there are contradictory medical opinions, to reject an examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Dr. Rau, a licensed psychologist, examined Rhodus in December 2012 and diagnosed major depressive disorder, moderate, without psychosis. (AR 291.) Dr. Rau found that Rhodus's understanding and memory were not significantly limited and he could remember simple instructions with repetition. (AR 292.) Dr. Rau stated that Rhodus was moderately limited in sustained concentration and persistence, and would frequently struggle with carrying out detailed instructions, staying focused for an extended period of time, and maintaining a consistent pace (due to pain, internal agitation and dysphoria, or frustration). (*Id.*) He also concluded that Rhodus was moderately limited in the area of social interaction – he may have difficulty with criticism and struggle being around others, and his stern and dysphoric presence may put others ill at ease. (AR 293.) The ALJ gave this opinion little weight finding it to be "unsupported by any evidence, objective findings, and [] inconsistent with other opinion evidence." (AR 16.)

The ALJ was accurate in finding Dr. Rau's opinion inconsistent with at least one other opinion, that of Dr. Glenn Marks. Dr. Marks noted that Rhodus exhibited almost no evidence of cognitive difficulties, and he scored 28 out of 30 on the Mini-mental status examination (MMSE) (failing to recall two of three words on delayed recall). (AR 322.) In his medical source statements, Dr. Marks opined that Rhodus had no impairment in concentration/persistence, social interaction, or adapting to change. (*Id.*) He also

- 5 -

1   determined that Rhodus's depression did not affect his ability to understand, remember
2   and carry out instructions; interact appropriately with supervisors, co-workers, or the
3   public; or respond to changes in the work setting. (AR 326-27.) In his report, he noted
4   that Rhodus's depression could possibly cause cognition problems that might interfere
5   with highly cognitively demanding work; however, he found him fully capable of
6   learning and retaining new information and information for which he was familiar from
7   past work. (AR 324.)

8   The Court examines Dr. Rau's report to evaluate the ALJ's finding that Dr. Rau's opinion was unsupported by evidence and objective findings. His forty-five minute exam is the only substantive evidence he relied upon in making his findings.[2]

11  The Court finds there is substantial evidence to support the ALJ's rejection of Dr. Rau's opinion because it is not supported by the evidence of record. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). On the MMSE, Rhodus scored 27 out of 30 (missing one of three words on a brief delay), only one point less than when administered two years later by Dr. Glenn Marks. (AR 290.) Dr. Rau found Rhodus had moderate limitations in concentration, focus, and pace, and in carrying out detailed instructions. (AR 292.) However, upon exam, Dr. Rau found Rhodus's attention, orientation, and effort unremarkable, and Rhodus described his concentration as non-problematic and stated that he had good recollection of personal interactions and activities. (AR 287, 288.) Dr. Rau also found Rhodus had moderate limitations in social interaction. (AR 293.) However, Dr. Rau recorded Rhodus's cooperation, rapport, insight, and judgment as unremarkable (AR 287), noted that he did well socializing with family, and recognized he had no

---

[2] Dr. Rau stated that, prior to the exam, he reviewed only "a medical note and a self-report note." (AR 287.)

history of acting out. (AR 290.) Rhodus reported normal conversational abilities (AR 288) and that he has always gotten along well with others (AR 289). Finally, Dr. Rau noted that Rhodus was "active behaviorally day-to-day in a healthy way." (AR 290.) Although there is some evidence to support Dr. Rau's opinion and, in turn, Rhodus's argument, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that the claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Here, specific and legitimate reasons, and substantial evidence, support the ALJ's rejection of Dr. Rau's opinion.

Finally, the Court looks at the opinions of Drs. Garland and Jack Marks, which were contradicted by the opinion of Dr. Glenn Marks. These doctors found very similar, but slightly more restrictive, limitations as Dr. Rau. They both concluded that Rhodus was moderately limited in understanding, remembering and carrying out detailed instructions, and maintaining attention and concentration for extended periods. They both found Rhodus moderately limited in interacting with coworkers, while Dr. Garland found the same limitation for the general public. Dr. Garland found Rhodus moderately limited in accepting instructions and criticism, while Dr. Marks found a marked limitation in this area. Additionally, Dr. Garland found a moderate limitation in completing a normal workweek without psychological interruptions and maintaining pace without unreasonable rest periods. They both concluded Rhodus could perform the basic mental demands of competitive, remunerative, unskilled work, particularly if it required only low social contact. (AR 55-57, 88-90.)

The ALJ rejected these opinions as not supported by the record as a whole and because these doctors did not review updated medical records, see Rhodus in person, or hear his testimony.[3] (AR 16.) The ALJ was correct in noting that these doctors saw only the evaluation by Dr. Rau and were not able to compare the opinion of Dr. Rau with the

---

[3] The Court does not rely on the fact that these doctors did not see Rhodus in person or hear his testimony, as that is true for all non-examining State agency physicians.

later evaluation of Dr. Glenn Marks. In contrast, the ALJ had the entirety of Rhodus's records and it was her job to resolve conflicts in medical testimony. *See Andrews*, 53 F.3d at 1039. Drs. Garland and Jack Marks noted that their opinions were based solely on the report of Dr. Rau. (AR 57, 89.) Therefore, for the same reasons discussed above with respect to Dr. Rau's opinion, the Court finds there is substantial evidence to support the ALJ's conclusion that these opinions were not in line with the record as a whole.

**Residual Functional Capacity**

First, Rhodus argues the ALJ failed to include, in the RFC, limitations found by Dr. Glenn Marks. Specifically, Dr. Marks stated that Rhodus's "possible cognitive problems might interfere with highly cognitively demanding work"; however, he found him fully capable of learning and retaining new information and information for which he was familiar from past work. (AR 324.) The equivocal statement quoted above is not a direct assessment of Rhodus's functional limitations. *See Griffith v. Colvin*, No. 3:13-cv-00585-HZ, 2014 WL 1303102, at *5 n.3 (D. Or. Mar. 30, 2014) (finding doctor's statements that claimant "may have difficulty completing work without interference from her mental impairments or performing work activities on a consistent basis without additional instructions do not represent 'work-related limitation[s] of function that nee[d] to be reflected in the RFC.'") Dr. Marks completed a separate mental medical source statement of Rhodus's ability to do work-related activities. He found no impairment in understanding, remembering, and carrying out instructions, including no impairment in remembering and carrying out complex instructions and making judgments on complex work-related decisions. (AR 326.) Therefore, in finding no mental limitations, the RFC fully accounted for Dr. Glenn Marks's functional limitation findings. *See Valentine*, 574 F.3d at 691 (upholding RFC that incorporated doctor's detailed mental residual functional capacity assessment rather than more generalized statements of functional abilities).

Second, Rhodus argues that because the ALJ found, in evaluating the paragraph B criteria, that Rhodus had mild limitations in daily living, social functioning, and

concentration, persistence and pace (AR 12), the ALJ was obligated to include mental limitations in the RFC.

Mild limitations, as found by the ALJ in Rhodus's case, do not necessarily translate to a restriction in ability to perform specific work functions. *See Foster v. Colvin*, No. 6:12-cv-00698-HZ, 2013 WL 3994652, at *4 (D. Or. Aug. 2, 2013) (rejecting argument that mild limitation in social functioning, found at Step Three, must be incorporated into subsequent detailed RFC evaluation). Even a severe mental impairment finding at Step Two does not mandate a corresponding RFC limitation in a claimant's ability to perform basic work activities. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). Further, the paragraph B criteria are not an RFC assessment; rather, they are used to rate the severity of a mental impairment at Steps Two and Three. SSR 96-8p; *Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (holding that Step Two and Three findings must be considered with "all of the relevant evidence" to form the RFC). The ALJ stated that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 13.) The ALJ cited specifically to the opinion of Dr. Glenn Marks, who found no impairment in the more specific RFC categories of maintaining attention, concentration, and attendance; understanding, remembering, and carrying out instructions; interacting appropriately with supervisors, co-workers, and the public; and adapting to work situations and changes in the work setting. (AR 324, 326-27.) Because the RFC is consistent with the opinion of Dr. Glenn Marks, regardless of the paragraph B functional assessment, it sufficiently captures Rhodus's limitations. *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F. App'x 15, 17-18 (9th Cir. 2012) (upholding RFC based on medical source opinions, which did not incorporate paragraph B finding of moderate limitation in social functioning).

Rhodus has not established the ALJ erred in formulating his RFC.

**CONCLUSION**

The Court concludes the ALJ did not err as to any of the claims raised by Rhodus. Therefore, Rhodus is not entitled to relief and his appeal is denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 18th day of September, 2017.

*[signature]*
Honorable Lynette C. Kimmins
United States Magistrate Judge